**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **WILLIAM RANDALL** | § | |
| | § | |
| | § | **CIVIL NO. 5:14-cv-947** |
| **VS.** | § | |
| | § | |
| | § | |
| **UNITED PETROLEUM TRANSPORTS,** | § | |
| **INC.** | § | |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, William Randall, Plaintiff in the above-entitled and numbered cause and files this, his Response to United Petroleum Transports, Inc. ("UPT") Motion for Summary Judgment.

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT………………….……………………………………1

INTRODUCTION………………………………………………………………….1

STANDARD OF PROOF FOR SUMMARY JUDGMENTS……………………..2

PLAINTIFF'S STATEMENT OF FACTS…………………………………………3

STATUTORY FRAMEWORK OF ADA……………………………………………7

PLAINTIFF'S DISABILITY CLAIM………………………………………....…7

PLAINTIFF SUFFERS FROM A PHYSICAL IMPAIRMENT COVERED BY THE ADA……………………………………………………………………..8

PLAINTIFF'S IMPAIRMENT SUBSTANTIALLY LIMITS A MAJOR LIFE ACTIVITY……………………………………………………………………8

DEFENDANT'S FAILURE TO ENGAGE IN INTERACTIVE PROCESS……..10

WORK FROM HOME AS A REASONABLE ACCOMMODATION UNDER THE ADA…………………………………………………………………12

FALSITY OF DEFENDANT'S REASON FOR TERMINATION………………15

PLAINTIFF'S "REGARDED AS" DISABLED CLAIM…………………………17

OBJECTIONS TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE….18

CONCLUSION……………………………………………………………… …..…....19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. District of Columbia*, __ F.Supp. __, 2014 WL 2918883 (D.D.C. June 27, 2014)…………………………………………………………………………………13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S.CT. 2505, 91 L.Ed. 202 (1986)……………………………………………..………………………...2

*Beck v. Univ. of Wisc. Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)……….11

*Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996)………………………18

*Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996)……………………………………………………………………………………11

*Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir. 1994)…………………………………13

*Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3rd Cir. 2010)…………………………..12

*Corley v. Dep't of Veterans Affairs ex rel Principi*, 218 F. App'x. 727, 738 (10th Cir. 2007)……………………………………………………………………………….10

*Cutrera v. Bd. Of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).11

*Davis v. Guardian Life Ins. Co. of Am.*, 2000 WL 1848596, at *6 (E.D. Pa. Dec. 15, 2000)……...……………………………………………………………………………14

*DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 104 (2d.Cir. 2010)………………..14

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d. 462, 471 (5th Cir. 2009)………….10

*E.E.O.C. v. AIC Sec. Investigation, Ltd.*, 820 F.Supp. 1060, 1064 (N.D. Ill. 1993).14

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 57L.Ed.2d. 957, 98 S.Ct. 2943 (1978)……………………………………………………………………………...16

*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503 (5th Cir. 2003)………………18

*Hernandez v. City of Hartford*, 959 F.Supp.125, 132 (D.Conn. 1997)...............14

*Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1136-37 (9th Cir. 2001)..13

*Jenkins v. Cleco Power LLC*, 487 F3d 309, 316 (5th Cir. La. 2007).................11

*Kinney v. Century Services Corp. II*, 2011 WL 2476569, at *10 (S.D. Ind. Aug. 9, 2011) ...............................................................................................9

*Langon v. HHS*, 959 F.2d 1053 (D.C.Cir. 1992)......................................13

*Lejeune v. Omni Energy Services, Corp*, Case 6:09-cv-00194-TLM-PJH (W.Dist.LA 2010) ........................................................................ 10

*Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847 (W.D. Tex. 2014).........12

*Loulseged v. Akzo Nobel, Inc.*, 178 F.3d. 731, 735-36 (5th Cir. 1999)...........10, 11

*Lowe v. Indep. School Dist. No. 1 of Logan County*, 363 F. App'x 438 (10th Cir. 2010).....................................................................................11

*Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1517 (2d Cir. 1995)........................12

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555 (1990)..........................2

*Marshall v. East Carroll Parish Hosp. Dist.*, 143 F.3d 222, 226 (5th Cir. 1998)....19

*Niimi-Montalbo v. White*, 243 F.Supp.2d 1109, 1125 (D. Haw. 2003)...............13

*Nixon-Tinkelman v. New York City Department of Health and Mental Hygiene*, Case No. 10-3317-cv (2nd Cir. 2011).......................................................14

*Olsen v. Capital Region Medical Center*, 713 F.3d 1149, 1154 (8th Cir. 2013)......9

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108-089, 147 L.Ed.2d 105 (2000)....................................................2, 3, 15, 16

*Rizzo v. Children's World Learning Ctrs., Inc.* 213 F.3d 209, 213 & n.5 (5th Cir. 2000) (en banc)........................................................................11

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d. 407 (1993)…..………………………………………………....………3, 15, 16

*Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956 (N.D. Cal. 1994)……..………..14

*Taylor v. Phoenixville School Dist.*, 174 F.3d 142, 1999 WL 184138, at *16 (3rd Cir. 1999)…………………………………………………………………………11

*Taylor v. Prinicipal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996)…………………………..11

*Waldrip v. General Elec. Co.*, 325 F.3d 652 (5th Cir. 2003)………………......18

*Wilson v. United States*, 162 U.S. 613, 620-21, 40 L.Ed. 1090, 16 S.Ct. 895 (1896)………………………………………………………………………...16

*Wright v. West*, 505 U.S. 277, 296, 120 L.Ed. 225, 112 S.Ct. 2482 (1992)………16

## Rules

Fed.R.Civ.P. 56(c)...................................................................................................3

Fed.R.Civ.P. 56(e)……………………………………………………………...18

## Statutes

29 C.F.R. Part 1630 App., § 1630.1(c), 76 Fed. Reg. 16978, 17005 (Mar. 25, 2011)…………………………………………………………...…..…10, 11

29 C.F.R. Part 1630 App., § 1630.2(g), 76 Fed. Reg. 16978, 17006 (Mar. 25, 2011)………………………………………………………………………11

29 C.F.R. Part 1630 App., § 1630.9 at 359……………………………………11

29 C.F.R. 1630.2(g)(3)…………………………………………………………17

29 C.F.R § 1630.2(h)(1)…………………………………………………………8

29 C.F.R. § 1630.2(i)...……………………………………………..………..8

29 C.F.R. § 1630.2(o)(3)…………..……………………..……………………..…....10, 11

42 C.F.R. § 1630.2(j)(1)(iii)….……………………………………………..……..8

42 C.F.R. § 1630.2(j)(1)(vii)….……………………………………………...……….9

42 C.F.R. Part 1630 App., § 1630.2(j)(1)(vii), 76 Fed. Reg. 16978, 17011 (Mar. 25, 2011)………………………………………………………………………….9

42 C.F.R. Part 1630 App., Substantially Limited in Working, 76 Fed. Reg. 16978, 17013 (Mar. 25, 2011)…………………………………………………………….…10

42 U.S.C. § 12102 (2)(A)-(C)……………………………………………...7, 8, 17, 18

42 U.S.C. § 12102(4)(D)...……………………………………………………………..9

42 U.S.C. § 12111(9)(B)….…………………………………………………… 12

42 U.S.C. § 12112 (a)……………………………………………………...…7, 17

42 U.S.C. § 12112 (b)(5)(A)……………………………………………...……..10

42 U.S.C. § 2323(2)(A) …………………………………………………………....7

**Miscellaneous**

EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 22 and n.65 (Oct. 2002, revised), http://www.eeoc.gov/policy/docs/accommodation.html ........................13

EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 34; Work At Home/Telework as a Reasonable Accommodation (Oct. 27, 2005), http://www.eeoc.gov/facts/telework.html ..............................................................14

Questions and Answers About Cancer in the Workplace and the Americans with Disabilities Act (ADA), at Question 11 (EEOC Aug. 3, 2005), http://www.eeog.gov/facts/cancer.html..................................................................14

Questions and Answers: Promoting Employment of Individuals with Disabilities in the Federal Workforce, (Exs. 10 and 11 EEOC), http://www.eeoc.gov/federa/qanda-employment-with-disabilities.cfm; EEOC Policy Letter, 5 NDLR ¶ 454 (March 31, 1994)…………………………………14

2 J. Wigmore, *Evidence* § 278(2), P. 133 (J.Chadbourn rev. ed. 1979)…………..16

## I.      Summary of Argument

1.      Plaintiff has brought two claims alleging violations of the Americans with Disabilities Act: failure to accommodate and disability discrimination. Defendant's Motion for Summary Judgment should be denied because (1) the evidence demonstrates that Defendant failed to engage in the interactive process as dictated by the ADA; (2) reasonable accommodations existed which would have allowed Plaintiff to perform his essential job duties for Defendant from home; (3) a fact issue exists as to whether Defendant's proffered reason for terminated was false and therefore a pretext for discrimination.

## II.      Introduction

2.      Defendant, UPT moved for summary judgment upon the basis that Plaintiff is not disabled and that commuting assistance is not a reasonable accommodation.  Defendant has not moved for summary judgment on the issue of whether Defendant discriminated against Plaintiff by regarding him as being disabled.  Plaintiff would show the Court that UPT is not entitled to summary judgment based upon the record before the Court.

### III.    Standard of Proof for Summary Judgments

3.      The Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000), although it concerned Rule 50 rather than Rule 56, made clear that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " *Reeves,* 120 S.Ct. at 2110 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

4.      In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.  In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  *Lytle* v. *Household Mfg., Inc.,* 494 U. S. 545, 554-555 (1990); *Liberty Lobby, Inc., supra*, at 254.  "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, *supra*, at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 300.

5.      In *Reeves* the Supreme Court held that a trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation alone, thereby rejecting the "pretext plus" analysis recognized by the Fifth Circuit previously.  "[R]ejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *St.*

*Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.... Such an inference [that the employer is dissembling to cover up a discriminatory purpose] is consistent with the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Id.* at 120 S.Ct. at 2108-09. Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law . . . . This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 120 S.Ct. at 2108-09.

6.      Plaintiff's burden can be met by the deposition testimony and documents submitted as summary judgment evidence on file and affidavits. Fed.R.Civ.P. 56(c). The record before us includes portions of the depositions of Plaintiff and Defendant's corporate representative, Ronald D. Holte, relevant discovery documents, as well as the summary judgment response.

### IV. <u>Plaintiff's Statement of Facts</u>

7.      Plaintiff submits the following facts in support of his response:

        a.      On October 30, 2013, Plaintiff was employed by UPT as a dispatcher/fleet manager in Greenwood, Louisiana.[1]

---

[1] Defendant's Statement of Facts; See: Ex A – Deposition of Ron Holte page 23, lines 13-18.

b.    Plaintiff's job responsibilities included dispatching transport trucks to deliver gasoline to UPT's customers.[2]

c.    Ron Holte was the Greenwood CSC (terminal manager) for UPT.[3]

d.    Ron Holte was responsible for hiring and firing all employees at the Greenwood terminal.[4]

e.    Plaintiff successfully completed all of his training for UPT.[5]

f.    Plaintiff fully, adequately and completely performed all of his job duties and his job was not in jeopardy as of his January 29, 2013 performance evaluation.[6]

g.    In Plaintiff's performance evaluation, he was recommended to transition to three additional stores.[7]

h.    At no time did Plaintiff's supervisor discuss any concerns with him regarding his job performance – in fact, he discussed giving Plaintiff a raise.[8]

i.    Plaintiff had not been presented with any written discipline prior to his termination.[9]

j.    Plaintiff informed Ron Holte that he had a medical condition that prevented him from driving to work.[10]

k.    Plaintiff provided a note to Ron Holte from his doctor (Dr. Perkins) prior to his termination.[11]

l.    The note from Plaintiff's doctor stated that he was 'disabled'.[12]

m.    Ron Holte was in possession of a note stating that Plaintiff could not drive before he recommended his termination.[13]

n.    Ron Holte had never terminated an employee prior to Plaintiff's termination for not

---

[2] See: Declaration of Ron Holte submitted by Defendant.
[3] Declaration of Ron Holte.
[4] Deposition of Ron Holte – page 11, lines 8-11.
[5] Deposition of Ron Holte – page 25, line 5 to page 26, line 10.
[6] Deposition of Ron Holte – page 29, line 4 to page 30, line 20; Ex B – Plaintiff's performance appraisal (UPT RFP 002-006); Plaintiff's deposition – page 40, line 23 to page 41, line 5.
[7] Deposition of Ron Holte – page 31, line 15 to page 32, line 3.
[8] See Ex I - Plaintiff's deposition – page 39, line 21 to page 40, line 7.
[9] Plaintiff's deposition – page 57, lines 19-24.
[10] Deposition of Ron Holte – page 44, line 14 to page 45, line 12; Ex C – Note from Dr. Perkins.
[11] Deposition of Ron Holte – page 45, line 13 to page 46, line 14.
[12] Deposition of Ron Holte – page 48, lines 6-11; Ex C.
[13] Deposition of Ron Holte – page 49, line 21 to page 50, line 8.

calling in for one day of work.[14]

  o. Prior to receiving his January 29, 2013 performance evaluation, Plaintiff had run two Texarkana locations out of gas.  Plaintiff never received a write up or discipline for these instances.[15]

  p. Other dispatchers had run stores out of gas and had not been terminated.[16]

  q. Ron Holte had never terminated a dispatcher for running a location out of gas on one occasion.[17]

  r. Plaintiff was terminated for job performance issues, specifically running the Texarkana store out of gas on one occasion.[18]

  s. Nothing in Plaintiff's termination letter mentioned job abandonment.[19]

  t. Plaintiff suffered a seizure while at a Lowes store in Longview, Texas and was immediately hospitalized.  He reported the incident to his supervisor, Ron Holte on or about February 13, 2013 and that the emergency room doctor had told him that he could not work and that he was going to consult with a neurologist.[20]

  u. After Plaintiff consulted a neurologist, he went to the Greenwood terminal and gave Holte a note from the neurologist (Dr. Perkins) that stated he could not work or drive.[21]

  v. Plaintiff believed that he would be released to return to work and did return to work on February 25, 2013.[22]

  w. Plaintiff worked on February 25, 2013, but informed Holte that he would have to be off due to his medication levels.[23]

  x. Plaintiff requested the accommodation of working from home and work at the office on Thursdays and Fridays, which was denied.[24]

  y. Defendant offered no accommodation to Plaintiff regarding his inability to drive.[25]

---

[14] Deposition of Ron Holte – page 18, lines 2-6.
[15] Deposition of Ron Holte – page 39, lines 2-9.
[16] Deposition of Ron Holte – page 54, lines 11-19.
[17] Deposition of Ron Holte – page 55, lines 6-8.
[18] Deposition of Ron Holte – page 58, line 5 to page 59, line 1; Ex D – Ron Holte email and termination letter (UPT RFP 121-122).
[19] Deposition of Ron Holte – page 59, lines 16-18; Ex D.
[20] Plaintiff's deposition – page 24, line 24 to page 26, line 22.
[21] Plaintiff's deposition – page 26, line 23 to page 27, line 22.
[22] Plaintiff's deposition – page 27, line 19 to page 28, line 19.
[23] Ex F – Holte email (UPT RFP 152).
[24] Plaintiff's deposition – page 29, line 7 to page 30, line 17.
[25] Plaintiff's deposition – page 66, lines 14-25.

z.     Other dispatchers had been given permission to work from home.[26]

aa.     On March 6, 2013 at 8:38 a.m., Judy Howell with human resources emailed Holte, stating: "He [plaintiff] needs to return to work with a doctor's release, or be terminated...today."

bb.     Plaintiff underwent an MRI at 1:00 p.m. on March 6, 2013 per a text message to Shelby Carney, which was passed along to UPT human resources.[27]

cc.     UPT human resources contacted Ron Holte regarding Plaintiff's inquiry regarding short term disability benefits.[28]

dd.     Ron Holte was aware of Plaintiff's inquiries regarding short term disability benefits prior to his termination.[29]

ee.     Ron Holte testified in his deposition that Plaintiff provided no medical documentation prior to his termination.[30]

ff.     Ron Holte signed a sworn declaration submitted to the Court in support of Defendant's Motion for Summary Judgment that Plaintiff *did* provide medical documentation to human resources prior to his termination.[31]

gg.     Ron Holte testified he either did not know or could not remember the basis for his statements in his sworn declaration submitted to the Court (doc 21-1).[32]

hh.     On March 4, 2013 (three days before Plaintiff's termination), Ron Holte was informed by human resources that Plaintiff had an appointment with his neurologist.[33]

ii.     On March 7, 2013, Plaintiff was terminated for poor job performance.[34]

jj.     Plaintiff's termination letter makes no reference to any failure to provide medical documentation.[35]

kk.     On March 11, 2013 (four days after Plaintiff's termination), Plaintiff's supervisor Ron Holte created an email to human resources describing an incident which took place on February 15, 2013, which purports to establish a non-discriminatory basis for Plaintiff's

---

[26] Plaintiff's deposition – page 43, lines 10-16; page 61, line 7 to page 61, line 25.
[27] Deposition of Ron Holte – page 61, line 21 to page 62, line 18; page 64, lines 10-13.
[28] Deposition of Ron Holte – page 64, line 23 to page 65, line 14.
[29] Ex E – Email from Ron Holte to human resources. (UPT RFP 142).
[30] Deposition of Ron Holte – page 93, lines 6-10.
[31] See: Ron Holte declaration (Doc 21-1) and Ron Holte deposition – page 93, lines 11-20.
[32] Ron Holte deposition – page 93, line 11 to page 98, line 3.
[33] Ex E – Email to Ron Holte from HR (UPT RFP 141).
[34] Ex G – (UPT RFP 112)
[35] Deposition of Ron Holte – page 91, lines 5-8.

termination.[36]

## V.    Statutory Framework of ADA

8.    The ADA makes it unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8) "The term `disability' means, with respect to an individual — (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." § 12102(2)(A)-(C) (emphasis added)

9.    Plaintiff brings two distinct causes of action: (1) that he has an actual disability under 42 U.S.C. § 12102(2)(A) for which Defendant failed to offer a reasonable accommodation and/or engage in the interactive process to determine whether Plaintiff could be afforded an accommodation; and, (2) that he was regarded as having a disability under 42 U.S.C. §12102(2)(C) and was terminated by Defendant as a result of his physical impairment.

## VI.    Plaintiff's Disability Claim

10.    A plaintiff who seeks to prove he is disabled under the ADA's definition of disability, subsection (A), must prove that he has a physical or mental impairment. 42 U.S.C. § 12102(2)(A).

---

[36] See Ex H – Ron Holte email (UPT RFP 102); deposition of Ron Holte – page 91, lines 9-23.

### A.       Plaintiff Suffers from a Physical Impairment Covered by the ADA

11.      Plaintiff has provided substantial evidence that he suffered from seizures during the relevant time frame.  The term "impairment" has consistently been defined to include physiological disorders affecting neurological body functions, specifically including epilepsy. Moreover, the EEOC's "Interpretive Guidance to Title I of the Americans with Disabilities Act," (hereinafter "Interpretive Guidance"), which is included as an appendix to the ADA implementing regulations, treats epilepsy as an impairment per se. 29 C.F.R. Pt. 1630.2(h), App. (1997). There is no question, under any reasonable interpretation of the facts, that Plaintiff's condition is a physical impairment that affects him in a manner covered by the ADA.[37]

### B.       Plaintiff's Impairment Substantially Limits a Major Life Activity

12.      Pursuant to 42 CFR §1630.2 (j)(1)(iii) The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

13.      Further, 29 C.F.R. 1630.2(i) defines Major life activities as follows:

(1)      In general. Major life activities include, but are not limited to:

(i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and

(ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, ***neurological, brain***, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an

---

[37] 29 C.F.R. §1630.2(h)(1).

individual organ within a body system. (emphasis added).

Plaintiff's seizure condition clearly implicates his neurological and brain functions; therefore, a major life activity is implicated, which mandates coverage under the ADA.

14.     Merely because Plaintiff's seizures were episodic or in remission, they still constitute a disability if they would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii). "This provision is intended to reject the reasoning of court decisions concluding that certain individuals with certain conditions—such as epilepsy or post traumatic stress disorder—were not protected by the ADA because their conditions were episodic or intermittent." 29 C.F.R. Part 1630 App., § 1630.2(j)(1)(vii), 76 Fed. Reg. 16978, 17011 (Mar. 25, 2011), quoted in *Kinney v. Century Services Corp. II*, 2011 WL 3476569, at *10 (S.D. Ind. Aug. 9, 2011).  It also rejects the results in cases finding that cancer in remission is not a disability because it was too short-lived. 29 C.F.R. Part 1630 App., § 1630.2(j)(1)(vii).  "It is thus expected that individuals with impairments that are episodic or in remission (e.g., epilepsy, multiple sclerosis, cancer) will be able to establish coverage if, when active, the impairment or the manner in which it manifests (e.g., seizures) substantially limits a major life activity." *Id.* See also *Olsen v. Capital Region Medical Center*, 713 F.3d 1149, 1154 (8th Cir. 2013) ("It is undisputed that Olsen was disabled, because Olsen suffered from seizures which, while occurring, incapacitated her and prevented her from performing her job duties.")

15.     Defendant repeatedly cites to pre-ADAAA cases which are not helpful to the Court's analysis regarding Plaintiff's disability. A substantial limitation in working falls under 'major life functions', which Defendant ignores in its motion.  As example of this change, the EEOC cites to the following pre-ADAAA case in which the court found no substantial limitation in working: *Corley v. Dep't of Veterans Affairs ex rel Principi*, 218 F. App'x. 727, 738 (10th Cir. 2007)

(involving seizure disorder, which the EEOC points out would now be found to substantially limit neurological function) 29 C.F.R. Part 1630 App., Substantially Limited in Working, 76 Fed. Reg. 16978, 17013 (Mar. 25, 2011). Additionally, Defendant's reliance upon *Lejeune v. Omni Energy Services, Corp, Case 6:09-cv-00194-TLM-PJH* (W.Dist La 2010) is misplaced. The court in *Lejeune* was faced with a fact pattern where the Plaintiff [Lejeune] would be working in a sales position driving a company vehicle. Plaintiff Randall's job did not require that he be able to drive a vehicle as an essential task of his job.[38]

### VII.   Defendant's Failure to Engage in Interactive Process

16.   Plaintiff contends that UPT failed to engage in the interactive process accommodate his disability pursuant to the ADA.   The ADA requires the employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).  Once an employee has made a request for an accommodation, the ADA's regulations state that "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation" in order to craft a reasonable accommodation. 29 C.F.R. § 1630.2(*o*)(3). *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 735-36 (5th Cir.1999); *E.E.O.C. v. Agro Distribution, LLC,* 555 F.3d 462, 471 (5th Cir.2009).  The EEOC's ADAAA guidance confirms the employer's obligation to engage in the reasonable accommodation "interactive process" in appropriate cases. 29 C.F.R. Part 1630 App., § 1630.1(c), 76 Fed. Reg. 16978, 17005 (Mar. 25, 2011); *id*. at § 1630.2(g), 76 Fed. Reg. 16978, 17006.  Defendant brings forth no evidence

---

[38] See: Ex J   - Plaintiff's job description.

that it engaged in the required interactive process once Plaintiff requested that he be allowed to work from home.

17. Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA. See *Taylor v. Phoenixville School Dist.*, 174 F.3d 142, 1999 WL 184138,at * 19; *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285 (7th Cir.1996); *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731 (C.A.5 (Tex.), 1999); see also *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). (employer may not stymie process by terminating employee before an accommodation can be considered); *Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 213 & n.5 (5th Cir. 2000) (en banc) (employer must not obstruct process and must make effort to communicate with employee and provide accommodations based on available information); *Loulseged*, 178 F.3d at 737-39 (each party must engage in the process); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317-18 (3d Cir. 1999) (employer has duty to seek specific information to enable it to make accommodations); *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) (failure to communicate indicates bad faith). *Jenkins v. Cleco Power LLC*, 487 F.3d 309, 316 (5th Cir. La. 2007).

18. Defendant decided to terminate Plaintiff, rather than invoke the good faith interactive process under the ADA. A reasonable jury could therefore find Defendant failed to engage in a good faith interactive process before subjecting Plaintiff to an adverse employment action. *Lowe v. Indep. School Dist. No. 1 of Logan County*, 363 F. App'x 548 (10th Cir. 2010) (whether employer failed to act in good faith is question of fact precluding summary judgment for the employer). *Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847 (W.D. Tex. 2014).

19.     In this case, Plaintiff made every effort to communicate with Defendant his need for time off for his seizures. When asked to allow Plaintiff to work from home, the Defendant flatly refused without engaging in the interactive process at all.  The Defendant's position is made even more untenable by the fact that it had allowed other employees in Plaintiff's position to work from home prior to Plaintiff's termination. The summary judgment evidence establishes that once presented with Plaintiff's need for accommodation, Defendant made *no effort* to determine what efforts could be made to work with Plaintiff's need, thereby violating the ADA.

VIII.   **Work From Home As a Reasonable Accommodation Under the ADA**

20.     The ADA's statutory definition of a reasonable accommodation includes "part-time or modified work schedules … and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).   The Defendant wrongly takes the position that 'commuting assistance' is not a reasonable accommodation under the ADA.[39]

21.     An employer may have an obligation to assist in an employee's commute. Indeed, this Court has stated that "there is nothing inherently unreasonable... in requiring an employer to furnish an otherwise qualified disabled employee with assistance related to her ability to get to work." *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1517 (2d Cir. 1995). Under certain circumstances the ADA can obligate an employer to accommodate an employee's disability-related difficulties in getting to work, if reasonable. *Colwell v. Rite Aid Corp*., 602 F. 3d 495 (3rd Cir. 2010).

22.     Defendant's position is simply to cite two unpublished opinions from the 3rd Circuit and 6th Circuit that have characterized "commuting to and from work is not part of the work environment that an employer is required to accommodate" and "if a plaintiff cannot drive he should find another means of transportation to and from work."

---

[39] Defendant's Memorandum in Support of Motion for Summary Judgment – pg. 10 (Doc 21-7)

23.     Defendant's view is contrary to the above-cited case law, and to EEOC guidance.  See

EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the

Americans with Disabilities Act, Question 22 and n. 65 (Oct. 2002, Revised),

http://www.eeoc.gov/policy/docs/accommodation.html   (attendance "is not an essential function

as defined by the ADA because it is not one of the fundamental job duties of the employment

position. As the regulations make clear, essential functions are duties to be performed.") (internal

citations  and quotations omitted).

24.     Defendant also asks the Court to adopt another extra-statutory *per se* rule that teleworking

(working from home) is never a reasonable accommodation.  Again, such an argument is not only

inconsistent with the plain language of the ADA, it is inconsistent with substantial authority. An

employer must generally consider telecommuting as a potential form of reasonable

accommodation.  *Adams v. District of Columbia*, ___ F.Supp. ___, 2014 WL 2918883 (D.D.C.

June 27, 2014) (applying both Rehabilitation Act and Americans with Disabilities Act) , citing 29

C.F.R. § 1630.2(o)(2)(ii).  *Carr v. Reno*, 23 F.3d 525, 530(D.C.Cir. 1994) ("in appropriate cases,

[the ADA] requires an agency to consider work at home ...as [a] potential form []of

accommodation") (citation omitted)  See also: *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d

1128, 1136–1137 (9th Cir. 2001) ("there is at least a triable issue of fact as to whether Humphrey

would have been able to perform the essential duties of her job with the accommodation of a work-

at-home position"); *Langon v. HHS*, 959 F.2d 1053 (D.C. Cir. 1992) (allowing computer

programmer to work at home may be reasonable accommodation); *Niimi-Montalbo v. White*, 243

F. Supp. 2d 1109, 1125 (D. Haw. 2003) (denying summary judgment on whether working from

home was reasonable); *Davis v. Guardian Life Ins. Co. of Am.*, 2000 WL 1848596, at *6 (E.D. Pa.

Dec. 15, 2000) (granting employee ability to work from home three days a week as an

accommodation); *Hernandez v. City of Hartford*, 959 F. Supp. 125, 132 (D. Conn. 1997) (genuine issue of material fact existed as to whether employee's request to work at home two days a week was a reasonable accommodation); *Sargent v. Litton Systems, Inc*., 841 F. Supp. 956 (N.D. Cal. 1994) (job restructuring may include modification that would enable employee to work at home); *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 104 (2d Cir. 2010) (suggesting that employer had provided a reasonable accommodation by allowing employee to work from home, which was "necessary to maintaining his job"); *Nixon-Tinkelman v. New York City Department Of Health And Mental Hygiene,* Case No. 10-3317-cv, (2nd Cir. 2011) (the district court should have considered whether defendants could have reasonably accommodated her needs simply by transferring her back to Queens or another closer location, allowing her to work from home, or providing a car or parking permit.); *E.E.O.C. v. AIC Sec. Investigation, Ltd*., 820 F. Supp. 1060, 1064 (N.D. Ill. 1993) (fact issue existed as to whether employee's extensive absences rendered her unqualified in light of testimony that he spent good deal of time working at home; also noting that "[w]hether a phone call is made from the office, a car phone, or a home is immaterial."); EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, supra at Question 34; Work At Home/Telework as a Reasonable Accommodation (EEOC Oct. 27, 2005) available at http://www.eeoc.gov./facts/telework.html; Questions and Answers About Cancer in the Workplace and the Americans with Disabilities Act (ADA), at Question 11 (EEOC Aug. 3, 2005), http://www.eeoc.gov/facts/cancer.html  (employer should consider telework to accommodate engineer undergoing radiation for cancer); Questions and Answers: Promoting Employment of Individuals with Disabilities in the Federal Workforce, Exs. 10 and 11 EEOC), available at http://www.eeoc.gov/federal/qanda-employment-with-disabilities.cfm; EEOC Policy Letter, 5 NDLR ¶ 454 (March 31, 1994) (whether working at home

is appropriate accommodation depends on whether it would be effective and whether it would result in undue hardship).

25.     Likewise, the evidence in this case compels a finding that there is an issue of material fact as to whether telework (working from home) would have been a reasonable accommodation in this case.  The Defendant permitted it for other dispatchers in the past[40] and offered no evidence as to why it did not allow Plaintiff to work from home.

## IX.     Falsity of Defendant's Reason for Termination

26.     According to the Supreme Court in *Reeves v Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), "…it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. The Court, in reiterating its position as stated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993) stated:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *id*. at 511.

27.     Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See *id*. at 517 ("Proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to

---

[40] Plaintiff's Statement of Facts (aa).

consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296, 120 L. Ed. 2d 225, 112 S. Ct. 2482 (1992); see also *Wilson v. United States*, 162 U.S. 613, 620-621, 40 L. Ed. 1090, 16 S. Ct. 895 (1896); 2 J. Wigmore, *Evidence* § 278(2), p. 133 (J. Chadbourn rev. ed. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978) ("When all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration"). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson*, 530 U.S. at 147.

28.     As in *Sanderson*, Plaintiff has provided ample evidence that the Defendant's reason for termination (poor job performance) is false.  First, Plaintiff was never written up for any alleged infractions prior to his termination.  In fact, his performance evaluation presented on January 29, 2013, described his performance as fully meeting all of his duties and responsibilities.  Second, the Defendant's human resources stated that Plaintiff needed to be terminated immediately on March 6, 2013 if he did not return to work with a doctor's release. No mention of Plaintiff's job performance was made in the email from human resources.  Third, Plaintiff was terminated for poor job performance on March 7, 2013 (i.e. running a location out of gas on one occasion on February 15, 2013).  Fourth, other dispatcher had run locations out of gas and had not been terminated and no other employee had been terminated for running a location out of gas on one

occasion.  Finally, the proffered reason for Plaintiff's termination was not arrived at or documented

until after his termination.  On March 11, 2013 (four days after Plaintiff's termination), Plaintiff's

supervisor Ron Holte created an email to human resources describing an incident which took place

on February 15, 2013 for which Plaintiff was never disciplined.  Therefore, there is sufficient

evidence of a triable issue of fact regarding the falsity of Defendant's reason for termination which

may permit the trier of fact to conclude that the Defendant unlawfully discriminated.

### X.   Plaintiff's "Regarded As" Being Disabled Claim

29.     Alternatively, Plaintiff brings a claim under 42 U.S.C. § 12102(2)(C) for being regarded

as having such an impairment covered by the ADA.  As stated previously, the ADA makes it

unlawful for an employer to discriminate against "a qualified individual with a disability because

of the disability of such individual in regard to job application procedures, the hiring, advancement,

or discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). The "regarded as" claim is further defined in 29

C.F.R. 1630.2(g)(3) as follows:  "Where an individual is not challenging a covered entity's failure

to make reasonable accommodations and does not require a reasonable accommodation, it is

generally unnecessary to proceed under the "actual disability" or "record of" prongs, which require

a showing of an impairment that substantially limits a major life activity or a record of such an

impairment. In these cases, the evaluation of coverage can be made solely under the "regarded as"

prong of the definition of disability, which does not require a showing of an impairment that

substantially limits a major life activity or a record of such an impairment.

30.     Even if a plaintiff does not have an "impairment that substantially limits one or more major

life activities" as defined by § 12102(2)(A), he may claim the protection of the ADA if he is

"regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). A plaintiff has a "regarded

as" disability if he (1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment. *Waldrip v. General Elec. Co*., 325 F. 3d 652 (5th Cir. 2003); *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503 (5th Cir.2003) (citing *Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996)).

31.     The summary judgment evidence establishes that Defendant's human resources department mandated that Plaintiff be terminated if he did not provide a doctor's excuse and return to work on March 6, 2013. Obviously, Defendant believed that Plaintiff was physically unable to work at the time he was terminated.  The plain meaning of the human resource email is that Plaintiff would not be allowed to continue his employment with the company because of the medical condition that was preventing him from working.  This, coupled with human resources knowledge of Plaintiff's attempt to qualify for short term disability benefits proves Defendant's awareness of Plaintiff's medical condition immediately prior to his termination.

## XI.     Objections to Defendant's Summary Judgment Evidence

32.     Plaintiff objects to the declaration of Ron Holte filed by Defendant in support of the motion for summary judgment as defective. Specifically, Plaintiff objects to the declaration of Ron Holte to the extent that it does not identify the details of how and why he has personal knowledge of the information recited therein.  FRCP 56(e).  Additionally, the declaration is objectionable to the extent that it constitutes bare allegations of fact, ultimate or conclusory facts and legal conclusions. *Marshall v. East Carroll Parish Hosp. Dist.,* 143 F3d 222, 226 (5th Cir. 1998).

## XII.   <u>Conclusion</u>

33.    Plaintiff would show the Court that based upon the evidence before the Court and the arguments presented herein, the Motion for Summary Judgment should be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant's Motion for Summary Judgment be overruled and for such other and further relief, general and special, at law or in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

/s/ William S. Hommel, Jr._____
William S. Hommel, Jr.
State Bar No. 09934250
HOMMEL LAW FIRM
1404 Rice Road, Suite 200
Tyler, TX 75703
903-596-7100
469-533-1618 Fax

ATTORNEY FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above and foregoing instrument has been served on all counsel of record in accordance with the Rules of Civil Procedure on this 31st day of July, 2015.

/s/ William S. Hommel, Jr._____
William S. Hommel, Jr.