UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WILLIAM RANDALL                                    CIVIL ACTION NO. 14-0947

VERSUS                                             JUDGE S. MAURICE HICKS, JR.

UNITED PETROLEUM TRANSPORTS,                       MAGISTRATE JUDGE HORNSBY
INC.

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 21) filed by the Defendant, United Petroleum Transports, Inc. ("UPT"). UPT seeks dismissal of the Americans with Disabilities Act ("ADA") discrimination claims filed by the Plaintiff, William Randall ("Randall"). Randall opposed the motion. See Record Document 41. For the reasons set forth below, UPT's Motion for Summary Judgment is **GRANTED** and all of Randall's claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

UPT is in the business of transporting gasoline by tractor-trailer to gas stations, where the gas is in turn sold to the public. See Record Document 21-1 at ¶ 3. In October 2012, Randall was hired by UPT as a dispatcher/fleet manager at the Greenwood, Louisiana terminal. See id. at ¶ 5; Record Document 41-11 at ¶ 1. There is no dispute that Randall's employment was at-will. See Record Document 21-1 at ¶ 17; Record Document 21-3; Record Document 21-4 at 58-59.

Randall previously lived in Houston, Texas. See Record Document 21-1 at ¶ 6. After being hired by UPT, Randall moved to Big Sandy, Texas, which is approximately 75 miles from UPT's Greenwood terminal. See id. Randall had a 75 mile one-way commute to and from work each day. See id.

Randall's job responsibilities included manning the phones to coordinate product delivery and dispatching transport trucks to deliver gasoline to UPT's customers. See Record Document 21-1 at ¶ 8; Record Document 41-11 at ¶ 2. He was required to work five days a week and every other weekend. See Record Document 21-1 at ¶ 9. Ron Holte ("Holte") was the terminal manager for UPT's Greenwood location. See id. at ¶ 2; Record Document 41-11 at ¶ 3. Holte was responsible for hiring and firing all employees at the Greenwood terminal. See Record Document 41-11 at ¶ 4.

On February 15, 2013, Randall suffered a seizure during non-work hours while at a Lowe's store in Longview, Texas. See Record Document 21-6. He was taken to the emergency room at Good Shepherd Medical Center in Longview, Texas and was released that same evening with instructions to see his primary care physician. See id. After seeing his primary care physician, Randall was referred to a neurologist for further evaluation. See Record Document 21-5 at 3. It appears that his first appointment with the neurologist was on March 5, 2013. See id. The neurologist, Dr. William D. Perkins, advised "that there is a Texas State Law prohibiting driving by a person who has a seizure for a time frame of six months" and that Randall "must be seizure-free for six months before returning to driving." Id. at 6. Dr. Perkins provided Randall with an excuse slip stating that "he is disabled as he cannot drive for 6 month[s]." Record Document 41-3. Dr. Perkins noted in his Clinic Notes that during the time frame of the February 2013 medical event, Randall "was taking a significant amount of Tramadol markedly over the daily allowance and this may have certainly played a significant role in lowering the seizure threshold that would have produced the [February 2013] event." Record Document 21-5 at 5-6. By his own admission, Randall was never diagnosed as suffering from any type of seizure disorder.

See Record Document 21-4 at 81.

Randall was scheduled to work on Saturday and Sunday, February 16-17, 2013. See Record Document 21-1 at ¶ 11. He did not appear for work those two days and he failed to call in. See id.[1] During his deposition, Randall testified that shortly after the February 15th event, he drove to the "office in Shreveport" and informed Holte that the emergency room doctors were not going to give him a return to work slip until he saw a neurologist. See Record Document 41-9 at 26-27.[2] Randall stated that he also contacted the human resources department with UPT in Oklahoma City, Oklahoma. See id. at 27. In February 2013, Randall had been employed with UPT for less than six months and was not eligible for medical leave. See Record Document 21-1 at ¶ 15. He had accrued only 3.1 hours in sick leave. See id. at ¶ 16.

After seeing the neurologist, Randall specifically informed Holte that he had a medical condition that prevented him from driving to work. See Record Document 41-1 at 44. Holte testified in his deposition that Randall "may have" given him Dr. Perkins' excuse slip. See id. at 45. There is no dispute that Holte possessed this information prior to March 7, 2013, the date upon which Randall was terminated. See Record Document 21-1 at ¶ 21.

Randall believed that he would be released to return to work and, in fact, did return to work on February 25, 2013. See Record Document 41-11 at ¶ 22. He worked on

---

[1] In his declaration, Holte stated that during the several days following the medical event, Randall did communicate by text with co-worker Shelby Carney using a UPT-issued iPhone. See Record Document 21-1 at ¶ 12. However, according to Holte, Randall never requested medical leave. See id.

[2] Holte recalled that this visit took place sometime after February 16, 2013. See Record Document 21-1 at ¶ 13.

February 25, 2013, but informed Holte that he would have to be off due to his medication levels. See Record Document 41-6. Holte noted at this time that Randall did "not have sick time and was off all last week." See id.

Randall contends that on March 6, 2013 at 8:38 a.m., Judy Howell ("Howell") with human resources emailed Holte, stating: "[Randall] needs to return to work with a doctor's release, or be terminated . . . today." See Record Document 41-11 at 27.[3] On March 7, 2013, Randall was terminated for poor job performance, including "on 2-15-2013 he left work before a driver was on location. This ran a Texarkana TX Murphy store out of gas." Record Document 41-4; see also Record Document 41-7 & Record Document 41-8. Holte explained that Randall's failure to call or report to work on February 16-17, 2013 was an additional basis for the termination. See Record Document 21-1 at ¶ 19. On March 11, 2013, four days after Randall's termination, Holte wrote an email to Howell explaining the events of February 15, 2013:

> On Friday 2-15-2013 [Randall] ran a Texarkana TX Murphy store out. Bill was told several times in the almost four months that this store required 2.5 on a Friday loads to keep from a run out. On this day he did not schedule the second load and we had a run out. As a matter of procedure at our terminal, if a Murphy store goes into the red, the fleet manager does not go home until the driver arrives and drops the load. 5 o'clock rolled around and [Randall] got up, told Shelby he was leaving, and left the rest of the team in the dark on this load. I called him on his cell phone and asked him why he left and he said he was sorry and was I going to fire him. I told him we will need to talk further about this when he returned. Latter [sic] that night Shelby said he has passed out but would be in Saturday. He did not show up. Texted Shelby saying he had a doctors appoint [sic] on the 18th. He came in the following Monday and I said we needed to talk. He did not work the full day and I was not able to talk to him. I was planning on letting him go based on the poor performance of this. Running a store out is a rookie mistake. We then lost 4 of our Murphy stores due indirectly because of this.

---

[3]Randall gives no specific citation to where such email can be found in the record.

Record Document 41-8.

Randall filed his amended complaint asserting ADA claims on May 22, 2014. See Record Document 4. UPT has now moved to dismiss all of Randall's disability discrimination claims, namely his claim that UPT failed to offer him a reasonable accommodation; and, alternatively, that UPT regarded him as having a disability and he was terminated as a result of his physical impairment. See Record Document 21.

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[4] "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

---

[4]The Court notes that Rule 56 now employs the phrase "genuine dispute," rather than "genuine issue." This 2010 amendment does not alter the Court's analysis, as there was not a substantive change to the summary judgment standard. See F.R.C.P. 56(a) and advisory committee's note.

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir.1995).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005). Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. See Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769 (2007). In sum, the motion for summary judgment "should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

## II. Failure to Accommodate Claim.[5]

Randall contends that he requested the accommodation of working from home and

---

[5] UPT addressed both discriminatory discharge and discriminatory failure to accommodate, as it believed the face of Randall's complaint was unclear. See Record Document 21-7 at 9. However, in his opposition, Randall states that he "brings two distinct causes of action: (1) that he has an actual disability . . . for which [UPT] failed to offer a reasonable accommodation . . . ; and, (2) that he was regarded as having a disability . . . and was terminated by [UPT] as a result of his physical impairment." Record Document 41 at 14. Thus, the Court will address the failure to accommodate claim first and then move to the "regarded as" claim.

working at the office on Thursdays and Fridays. He maintains that his request was denied and that UPT offered no accommodation to him regarding his inability to drive. The ADA, 42 U.S.C. § 12102 *et seq.*, prohibits discrimination in employment against a qualified individual on the basis of his disability. Generally, to prevail on a failure to accommodate claim under the ADA, Randall must establish that (1) he is a qualified individual with a disability, (2) the disability and its consequential limitations were known by the covered employer, and (3) the employer failed to make a reasonable accommodation for such known limitations. See Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

As a threshold requirement, Randall must, of course, establish that he has a disability. See Waldrip v. Gen. Elec. Co., 325 F.3d 652, 654 (5th Cir.2003), *quoting* Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir.1996). In this context, a disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" 29 C.F.R. § 1630.2(g). Randall argues that he has provided substantial evidence that he suffered from seizures during the relevant time frame. See Record Document 41 at 15. He further implies that he had epilepsy. See id. Yet, he has failed to present any medical records and/or affidavits, declarations, or

deposition testimony from physicians to support his contention of a seizure disorder. See Gen. Universal Sys., Inc., 379 F.3d at 141 (If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial.").

The only summary judgment evidence submitted by Randall that relates to his alleged physical impairment is an excuse slip from Dr. Perkins dated March 6, 2013. See Record Document 41-3. The excuse slip provides that "[Randall] is disabled as he cannot drive for 6 month[s]." Id. Assuming that this document is properly authenticated, it is insufficient to establish the existence of a physical impairment that substantially limited one or more of Randall's major life activities. More importantly, Randall testified in his deposition that "no one has ever determined that [he had] a seizure disorder." Record Document 21-4 at 81. He further testified that he did not have any physical impairments. See id. at 120. When asked if there was a "real disability" that prevented him from working, Randall answered, "No. I just could not drive." Id. at 79. This admission is critical, as the Fifth Circuit has declined to hold that driving is a major life activity under the ADA:

> Driving may be ubiquitous in our society, but we are not prepared to hold today that driving is a major life activity for ADA purposes: it is not on the non-exhaustive list of major life activities (including walking, seeing, and breathing) in the EEOC regulations, 29 C.F.R. § 1630.2(l), and the Second and Fourth Circuits have found that driving is not a major life activity. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir.1998), cert. denied, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999); Wyland v. Boddie-Noell Enters., Inc., 165 F.3d 913, 1998 WL 795173, at *2 n. * (4th Cir.1998) (unpublished opinion). For the purposes of this case, driving and working are synonymous, and the analysis applied to the major life activity of working resolves Wilson's claim as to driving, as well.

Wilson v. Capital Transp. Corp., 234 F.3d 29 (5th Cir. 2000); see also Lejeune v. Omni

Energy Servs. Corp., No. 6:09-CV-0194, 2010 WL 378305, at *8 (W.D. La. Jan. 29, 2010). Randall's case does not present an instance where driving and working are synonymous; thus, Randall's own admission that driving was his only limitation precludes a finding of a disability, that is, a physical impairment that substantially limited one or more of his major life activities. Accordingly, UPT's Motion for Summary Judgment is **GRANTED** as to Randall's failure to accommodate claim under the ADA.

### III.   "Regarded As" Disabled Claim.[6]

A disability under the ADA includes being regarded as having a physical impairment that substantially limits one or more major life activities. See 42 U.S.C. § 12102(1)(C). Randall makes his regarded as claim in the alternative to his failure to accommodate claim. Randall argues in his opposition that "the summary judgment evidence establishes that [UPT's] human resources department mandated that [Randall] be terminated if he did not provide a doctor's excuse and return to work on March 6, 2013." Record Document 41 at 25; Record Document 41-11 at ¶ 27. He contends that human resource emails make it obvious that UPT "believed that [he] was physically unable to work at the time he was terminated." Id. He bases this contention on "the plain meaning of the human resource email[s]." Id. Randall also notes "human resources['] knowledge of [his] attempt to qualify for short term disability benefits." Id.

UPT seeks dismissal of Randall's regarded as claim on multiple grounds. First, UPT contends that the human resource emails are unauthenticated and are improper summary

---

[6]UPT argues that Randall's "regarded as" claim was plead in conclusory fashion and should be dismissed on those grounds alone. See Record Document 21-7 at 10. UPT also contends that the "regarded as" definition of disability may be inapplicable when actual disability cannot be shown. See id., citing Interpretive Guidance to 29 C.F.R. § 1630.2(j). Despite these arguments, the Court will analyze Randall's "regarded as" claim.

judgment evidence.[7] Even if properly authenticated, UPT argues that the emails simply show that UPT understood that Randall had an unspecified medical condition that prevented him frm driving for six months, i.e., prevented him from driving the 75 mile commute to and from work), not that UPT regarded him as having a physical impairment. While the Court agrees that such emails are unauthenticated, it need not decide the "regarded as" claim on the basis of the emails, as 42 U.S.C. § 12102(3)(B) is dispositive of the claim. See Montes v. Ransom, 219 F. App'x 378, 380 (5th Cir.2007); see also Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir.1991) (holding that documents submitted as summary-judgment evidence must be authenticated).

Next, UPT points the Court to Section 12102(3), which provides:

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. ***A transitory impairment is an impairment with an actual or expected duration of 6 months or less.***

42 U.S.C. § 12102(3) (emphasis added). Here, Randall has admitted that his only disability/impairment was his inability to drive to work and it is undisputed that the limitation

---

[7]"E-mails (like letters and other documents) must be properly authenticated or shown to be self-authenticating." Uncle Henry's Inc. v. Plaut Consulting Inc., 240 F. Supp. 2d 63, 71-72 (D. Me. 2003) *modified on reconsideration*, No. CIV. 01-180-B-H, 2002 WL 31833139 (D. Me. Dec. 17, 2002) and *aff'd sub nom.* Uncle Henry's Inc. v. Plaut Consulting Co., 399 F.3d 33 (1st Cir. 2005); see also U.S. v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir.2000).

upon his ability to drive was for six months. Based upon the plain language of Section 12102(3)(B), Randall's inability to drive was a transitory impairment and Section 12102(1)(C)'s regarded as provision is inapplicable. UPT's Motion for Summary Judgment is, therefore, **GRANTED** as to Randall's regarded as claim under the ADA.[8]

## CONCLUSION

Based on the foregoing analysis, UPT's Motion for Summary Judgment (Record Document 21) is **GRANTED**, as both Randall's failure to accommodate claim and regarded as claim under the ADA fail as a matter of law.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith. The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 17th day of September, 2015.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[8]Within his opposition, Randall objected to the declaration of Holte as defective because it is not based on personal knowledge and it contains bare allegations of fact, ultimate or conclusory facts and legal conclusions. See Record Document 41 at 25. Based on the Court's review of Holte's declaration, such objections are hereby **OVERRULED**.